IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOHN ALLEN MUHAMMAD,     )
                                   )
            Plaintiff,      )
                                   )
                                   )     Case No.: 1:07cv1022
    v.                            )
                                   )
LORETTA K. KELLY,          )
                                   )
            Defendant.    )

## MEMORANDUM OPINION

On November 17, 2003, Petitioner John Allen Muhammad was convicted after trial in the

Circuit Court of Virginia Beach of two counts of capital murder for the 2002 killing of Dean

Meyers (one count of capital murder for more than one murder in three years, and one count of

capital murder for murder in the commission of an act of terrorism), one count of conspiracy to

commit capital murder, and one count of illegal use of a firearm in commission of a murder.

After a separate sentencing proceeding from November 17 through November 24, 2003, the jury

sentenced Muhammad to two death sentences for the capital murder convictions and thirteen

years in prison on the remaining convictions. After the case was transferred back to the Circuit

Court of Prince William County, on March 9, 2004, the trial court imposed the two death

sentences and sentence of imprisonment as fixed by the jury. After unsuccessfully challenging

the imposition of the death penalty on both direct appeal and in state collateral proceedings,

Muhammad now petitions the Court on writ of habeas corpus pursuant to 28 U.S.C. §2254. The

matter before the Court is Petitioner's Motion and Petition for Writ of Habeas Corpus Ad

Prosequendum *First Amended* (Dkt. Nos. 39 and 43) and Respondent's Motion to Dismiss (Dkt. Nos. 53, 57).  For the reasons stated in the following memorandum opinion, it is ORDERED that Respondent's Motion to Dismiss is GRANTED and the Petitioner's Application for Writ of Habeas Corpus Ad Prosequendum *First Amended* is DISMISSED in full.  In accordance, the Petitioner is not entitled to an evidentiary hearing on any of his claims.

## I.      Facts

As the Virginia Supreme Court has fully set forth the facts of Muhammad's crimes on direct appeal, we dispense with further recitation of the facts and adopt and incorporate herein the facts as set forth by the Virginia Supreme Court.  *Muhammad v. Commonwealth*, 619 S.E.2d 16, 24-30 (Va. 2005).

## II.     Procedural History

Muhammad was arrested on October 24, 2002, and subsequently indicted by a grand jury on October 28, 2002, for the capital murder of Dean Meyers as more than one murder in three years, VA CODE § 18.2-31(8); capital murder of Dean Meyers in the commission of an act of terrorism, VA CODE §§ 18.2-31(13) and 18.2-46.4; conspiracy to commit capital murder, VA CODE §§ 18.2.-22 and 18.2-32; and illegal use of a firearm in the commission of capital murder, VA CODE § 18.2-53.1.  The venue was then changed from the Circuit Court of Prince William County to the Circuit Court of Virginia Beach upon the motion of Muhammad.

Following a lengthy jury trial from October 20 through November 17, 2003, Muhammad was convicted of all charges in the grand jury indictment.  After a separate sentencing hearing, the jury sentenced Muhammad to two death sentences for the capital murders, and thirteen years for the remaining non-capital convictions.  The jury based its death sentences on specific findings

2

regarding aggravating factors, including Muhammad's future dangerousness and the vileness of the crimes. Following these sentencing proceedings, venue was transferred back to Prince William County, where the trial court imposed the two death sentences and sentences of imprisonment as fixed by the jury, and entered final judgment on March 29, 2004.

Muhammad timely noted appeals of his convictions, which were consolidated and heard by automatic priority appeal before the Virginia Supreme Court in the Spring of 2005. In an extensive opinion, the Virginia Supreme Court affirmed Muhammad's convictions and the sentences of death on April 22, 2005. *See Muhammad v. Commonwealth*, 619 S.E.2d 16 (Va. 2005). The court denied Muhammad's petition for rehearing on September 24, 2005. Thereafter, Muhammad sought a writ of certiorari in the Supreme Court of the United States, which was denied on May 15, 2006. *See Muhammad v. Virginia*, 547 U.S. 1136 (2006).

Following Prince William County Circuit Court's appointing counsel to represent Muhammad on habeas review, Muhammad filed an original petition for writ of habeas corpus in the Virginia Supreme Court on July 14, 2006. The petition exceeded the 50-page limit on original habeas petitions in capital cases. *See Va. Sup.Ct. R. 5:7A(g)*. Muhammad's petition also included a motion to excuse Muhammad from the Rule 5:7A(g)'s requirements and to amend the petition. The Virginia Supreme Court denied the motion, ordering Muhammad to file a petition in compliance with the Rule's page limitations within 17 days of the original statutory filing date. *Muhammad v. Warden*, No. 061428 (Va. July 27, 2006). Muhammad did so, filing a proper petition on July 31, 2006. Thereafter, the Virginia Supreme Court dismissed Muhammad's petition on June 12, 2007, *Muhammad v. Warden*, 646 S.E.2d 182 (Va. 2007), and again denied his petition for rehearing. On April 14, 2008, the Supreme Court of the United

States denied Muhammad's petition for a writ of certiorari. *Muhammad v. Kelly*, 128 S.Ct. 1889 (2007).

The Circuit Court of Prince William County scheduled Muhammad's execution for November 5, 2007. On October 26, 2007, Muhammad was appointed counsel and the execution was stayed by an Order of this Court. *See Muhammad v. Kelly*, Civil Action No. 07-1022 (E.D. Va. October 26, 2007) (Order). On the same date, the Court issued an additional order allowing Muhammad to file a 50-page petition for writ of habeas corpus within 60 days. Thereafter, the Court granted Muhammad an additional 30 days to file an 80-page petition. *See Muhammad v. Kelly*, Civil Action No. 07-1022 (E.D.Va. November 20, 2007) (Order). Again on January 22, 2008, the Court ordered Muhammad to file a place-holder petition by the 90-day statutory filing date, and granting Muhammad advance leave to file an amended petition 90 days later. *See Muhammad v. Kelly*, Civil Action No. 07-1022 (E.D. Va. January 22, 2008) (Order). Muhammad filed his place-holder petition on January 24, 2008, and thereafter filed his amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 23, 2008. The amended petition sets out the numerous grounds for relief, which are summarized in short form as follows:

I.   Improper exclusion of expert testimony in the penalty phase.

    A.   The exclusion violated the Eighth and Fourteenth Amendment rights to a fair sentencing.

    B.   The exclusion violated the Fifth, Sixth, and Fourteenth Amendment rights to present a defense.

    C.   The exclusion was the fault of trial counsel.

II.   Ineffective assistance of counsel.

4

A.   Trial counsel failed to object to Muhammad's self-representation on grounds of incompetency.

III.   The Commonwealth pursued inconsistent theories against Muhammad and Malvo.

IV.   The indictments are invalid because they failed to allege aggravating factors that made Muhammad death penalty eligible under Virginia law.

V.   The Virginia terrorism statutes are unconstitutional.

A.   Terrorism statutes do not define terrorism or the triggerman exception with sufficient particularity.

B.   The statutes do not require the proof of the intent to kill.

C.   The statutes make jurors the victims, therefore it is impossible to empanel an impartial jury.

VI.   Brady Claims.

A.   The Commonwealth withheld material exculpatory evidence in regard to:

1.   Witness Sergeant Major Spicer;

2.   The Parker murder;

3.   The Charlot murder;

4.   The Ballenger murder;

5.   Ballistics;

6.   Letters written by Malvo to another inmate.

## III.   Standard of Review

Muhammad petitions this Court for review under the federal habeas statute, 28 U.S.C. §

2254, the Antiterrorism and Effective Death Penalty Act (AEDPA). Pub. L. No. 104-132, 110

Stat. 1214 (1996). This statute "sharply limits federal review of a petition for habeas corpus

relief from a state conviction and sentence." *Powell v. Kelly*, 531 F. Supp. 2d 695, 705 (E.D. Va.

2008). It demands "a highly deferential standard for evaluating state court rulings." *Bell v.

Cone*, 543 U.S. 447, 455 (2005) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Section 2254 mandates that federal habeas relief is only proper when state court proceedings:

> i) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established federal law, as determined by the Supreme Court of the United States;
>
> or
>
> ii) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, under the first prong, a federal court reviewing state court

proceedings must give considerable deference to the state court's rulings, and may grant habeas

relief only where a state court decision is "contrary to . . . clearly established" Supreme Court

precedent. A state decision is "contrary to" Supreme Court precedent only where "the state court

applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or

confronts facts "materially indistinguishable" from a Supreme Court decision and the state court

comes to a different result than that dictated by precedent. *See Williams v. Taylor*, 529 U.S. 362,

405-406 (2000); *see also Lovitt v. True,* 403 F.3d 171, 178 (4th Cir. 2005). Similarly, "a federal

habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly. Rather, that application must also be unreasonable." *Id.* at 178 (quoting *Williams*,

529 U.S. at 411). An application of federal law is unreasonable when the state court "identifies

the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *See Lenz v. Washington*, 444 F.3d 295, 300 (4th Cir. 2006) (quoting *Rompilla v. Beard*, 545 U.S. 374 (2005)).

Moreover, under the second prong of Section 2254(d), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003). A federal court therefore must presume a factual determination made by the state court to be correct, and may not grant habeas relief unless the petitioner rebuts this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

These principles provide the framework for the Court's review of Muhammad's habeas claims.

### IV.    Merits Review

*A.    Claim I:   Improper Exclusion of Expert Testimony During the Penalty Phase.*

Muhammad argues that the trial court unconstitutionally excluded the testimony of one of his court-appointed mental health experts, Dr. Mark Cunningham, in the penalty phase of his trial. Specifically, Muhammad contends that the exclusion of his expert's testimony by the trial court violated his rights under the Eighth Amendment, *see Eddings v. Oklahoma*, 455 U.S. 104 (1982), and the Fifth and Sixth Amendments, *see Taylor v. Illinois*, 484 U.S. 415 (1988).

During trial, Muhammad notified the Commonwealth that Dr. Cunningham would testify in the sentencing phase for two purposes: first, to interpret mitigating evidence regarding

7

Muhammad's troubled youth, particularly the lay witness testimony about Muhammad's difficult and violent upbringing; and, second, to establish Muhammad's lack of future dangerousness by attempting to show the low statistical probability that Muhammad would commit serious violent crimes in prison. Pursuant to Virginia law, the trial court appointed an expert for the Commonwealth for a reciprocal evaluation of Muhammad. Muhammad refused to be interviewed by the Commonwealth's expert under any circumstances. Consequently, the trial court excluded Dr. Cunningham's testimony under a Virginia Code provision allowing the exclusion of a defendant's expert where the defendant refuses to cooperate with the Commonwealth's expert. *See* VA CODE 19.2-264.3:1. The trial court did offer to hear Dr. Cunningham's testimony regarding future dangerousness outside the presence of the jury and rule on its admissibility. Muhammad did not avail himself of that opportunity. After both parties had rested their case at sentencing, Muhammad again proffered an affidavit containing Dr. Cunningham's testimony, which the trial court rejected.[1] *See Muhammad v. Commonwealth*, 619 S.E.2d at 47. In post-trial proceedings, Muhammad raised for the first time an argument that the Commonwealth was not entitled to a reciprocal evaluation because he provided notice of Dr. Cunningham's expert testimony for limited purposes only. *Id.* On direct appeal, the Virginia Supreme Court held that under Virginia Supreme Court Rule 5:25, Muhammad had waived this argument. *Id.* at 47 (citing Va. Sup. Ct. R. 5:25) ("Objections must be stated with reasonable

---

[1] Muhammad appears to be factually correct in stating that he provided the trial court with Dr. Cunningham's proffer prior to opening statements, and later provided a second affidavit after sentencing. F.H.A. 57-70. However, as explained below, the trial court properly excluded Dr. Cunningham's mitigation testimony based upon Muhammad's unwillingness to submit to a reciprocal evaluation, so the multiple proffers by affidavit make no difference to this Court's analysis.

8

certainty at the time of the trial court's ruling in order to be preserved for appellate review."). The Court also held that Muhammad waived objection to the exclusion of Dr. Cunningham's testimony on future dangerousness when he declined to present that testimony to the court outside of the presence of the jury. *Id.* at 47.

In reviewing Muhammad's habeas claims, this Court first must consider whether part or all of his claims are procedurally defaulted. A claim is procedurally defaulted when a state court expressly finds that review is barred by an "adequate" and "independent" state procedural rule. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). A rule is adequate "if it is regularly and consistently applied by the state court," and is independent "if it does not depend on a federal constitutional ruling." *See Yeats v. Angelone*, 166 F.3d 255, 261-62 (4th Cir. 1999) (internal citations and quotations omitted). When a state court has declined review under a state procedural rule, "concerns of comity and federalism counsel in favor of a federal habeas court declining to reach the merits of the federal claim." *Id.* at 261. Thus, the federal court should dismiss it unless the petitioner shows either cause for the default and prejudice arising from the default, or a fundamental miscarriage of justice. *Fisher*, 163 F.3d at 844.

Upon review, the Court holds that Muhammad's habeas claims are procedurally defaulted to the extent they are based upon the exclusion of Dr. Cunningham's limited testimony on dangerousness, or his post-trial argument that the Commonwealth was not entitled to a reciprocal evaluation. In *Weeks v. Angelone*, 176 F.3d 249, 270 (4th Cir. 1999), the Fourth Circuit held that Rule 5:25 is an adequate and independent state procedural rule. Here, on direct appeal the Virginia Supreme Court applied Rule 5:25 and held that Muhammad waived these arguments by not properly or timely objecting during trial. This Court sees no prejudice, no miscarriage of

justice, and no reason to disturb the Virginia Supreme Court's application of its own waiver rule. Both comity and federalism are advanced by this Court deferring to the Virginia Supreme Court's application of Rule 5:25. *Yeats*, 166 F.3d at 261. Nor has Muhammad offered any cause for his default. In fact, the trial court provided Muhammad with an opportunity to present Dr. Cunningham's testimony on future dangerousness, albeit in a limited fashion, and he decided not to do so. Muhammad also does not explain why he waited until post-trial proceedings to raise the argument that the Commonwealth was not entitled to a reciprocal evaluation. Accordingly, to the extent Muhammad's habeas claims rest upon these arguments, this Court finds them procedurally defaulted and will not consider them.

Turning to the constitutional review of Muhammad's claims, this Court finds no constitutional error in the exclusion of Dr. Cunningham's proposed testimony on mitigation. Applying *Buchanan v. Kentucky*, 483 U.S. 401 (1987), the Virginia Supreme Court affirmed the trial court's exclusion of this testimony based upon Muhammad's unwillingness to submit to an interview with the Commonwealth's expert, Dr. Park Dietz. *See Muhammad v. Commonwealth*, 619 S.E.2d at 48. According to the federal habeas statute, this ruling may be set aside only if it was contrary to, or an unreasonable application of, federal law as determined by U.S. Supreme Court precedent. *See* 28 U.S.C. § 2254(d). In *Buchanan*, the U.S. Supreme Court held that the prosecution is entitled to a fair rebuttal of defendant's mental health evidence. "[I]f a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least the prosecution may rebut this presentation with reports of the examination that the defendant requested." 483 U.S. at 422-423. Here, Muhammad refused to submit to an examination with Dr. Dietz despite multiple warnings from the trial judge that this refusal could result in the

exclusion of his expert testimony regarding mitigation under Virginia law. *See* VA CODE § 19.2-264.3:1. Had the trial court not excluded Dr. Cunningham's testimony, Muhammad's failure to cooperate by submitting to a reciprocal evaluation would have denied the Commonwealth a fair rebuttal of Muhammad's mental health evidence and violated the *Buchanan* principle. In sum, because the Virginia Supreme Court correctly applied federal precedent, Muhammad's constitutional claims with regard to the exclusion of Dr. Cunningham's testimony must be dismissed. *See* 28 U.S.C. § 2254(d).

Moreover, Muhammad voluntarily waived his right to present expert testimony on mitigation when he refused to submit to an examination by the Commonwealth's expert. Although it is true that "limiting the evidence a criminal defendant may present in his defense implicates numerous constitutional rights," *Muhammad v. Commonwealth*, 619 S.E.2d at 48, such constitutional rights may be waived if that waiver is knowing and voluntary. *See Iowa v. Tovar*, 541 U.S. 77, 80 (2004) (citation omitted) (waiver of constitutional rights in the criminal process requires a knowing and intelligent waiver done with sufficient awareness of the circumstances).[2] It is clear from the record that Muhammad was apprised of his rights. Muhammad acknowledged that he understood the requirements of Virginia law and the potential consequences for noncompliance. *Muhammad v. Commonwealth*, 619 S.E.2d at 46. Indeed, as noted above, the trial judge gave him multiple warnings before excluding his expert under the

---

[2] The Court recognizes that habeas review requires examination of important constitutional rights, and certainly appreciates the value of a defendant's right to present relevant mitigation evidence during the penalty phase of a capital trial. *See Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Taylor v. Illinois*, 484 U.S. 400 (1988). These rights are not undermined by the Court's finding of waiver, given that Muhammad was fully apprised of the statutory requirement that he submit to a reciprocal evaluation and the potential consequence of exclusion of his own expert.

relevant statute.[3]  On the basis of this record, the Virginia Supreme Court held that Muhammad

knowingly and voluntarily waived his rights in regard to presentation of mitigating evidence by

his deliberate failure to cooperate under VA CODE § 19.2-264.3:1.  Moreover, to the extent

waiver is a question of fact, Muhammad presents no clear and convincing evidence to rebut that

determination.  28 U.S.C. § 2254(e).

 As an alternative argument, Muhammad contends that his trial counsel were ineffective

for failing to make timely objections and preserve his claims regarding the trial court's exclusion

of Dr. Cunningham.  On state habeas review, the Virginia Supreme Court thoroughly reviewed

and dismissed all of Muhammad's claims regarding ineffective assistance of counsel – including

the claims based on the exclusion of Dr. Cunningham's testimony – under the standard espoused

in *Strickland v. Washington,* 466 U.S. 668 (1984).  *See Muhammad v. Warden,* 646 S.E.2d at

193-194.  Under *Strickland,* a successful claim for ineffective assistance requires a showing that:

(1) counsel's performance fell below an objective standard of reasonableness; and (2) the

deficient performance of counsel prejudiced the defense.  466 U.S. at 687.  Under the first prong

of the *Strickland* test, the court must "apply a 'strong presumption' that a trial counsel's strategy

and tactics fall 'within the wide range of reasonable professional assistance.'"  *United States v.

Roane,* 378 F.3d 382, 404 (4th Cir. 2004) (quoting *Strickland,* 466 U.S. at 689).  "For a lawyer's

trial performance to be deficient, his errors must have been so serious that he was not

'functioning as the counsel guaranteed the defendant by the Sixth Amendment.'"  *Id.*

---

[3] These warnings were required by statute; Virginia law provides that a trial court has an
affirmative duty to advise a defendant that a refusal to cooperate with the Commonwealth's
expert "could result in the exclusion of the defendant's expert evidence."  *See* VA CODE § 19.2-
264.3:1.  If a defendant refuses to cooperate, the trial court has the discretion to bar that
defendant from presenting his expert evidence.  *Id.*

Furthermore, "the reasonableness of a lawyer's trial performance must be 'evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential.'" *Roane*, 378 F.3d at 404-405 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).  To establish prejudice under the second prong of *Strickland*, "a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Roane*, 378 F.3d at 405 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *Id.*

Muhammad's trial counsel made a tactical decision not to offer Dr. Cunningham's testimony on dangerousness for admissibility review outside the presence of the jury, instead proffering that testimony by affidavit.  Such tactical decisions do not rise to the level of ineffective assistance of counsel under the *Strickland* test.  *See Bell v. Evatt,* 72 F.3d 421, 429 (4th Cir. 1995) (to succeed on ineffective assistance of counsel claim, petitioner "must overcome the presumption that the challenged action may be considered an appropriate and necessary trial strategy under the circumstances"); *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996) ("In analyzing counsel's performance under [*Strickland*,] a reviewing court must be 'highly deferential' in scrutinizing trial counsel's tactics.").  Muhammad made another tactical decision to refuse to submit to a reciprocal evaluation by Dr. Dietz despite full knowledge of the potential legal consequences of that decision.  He now argues that counsel failed to warn him of these consequences.  But as the Virginia Supreme Court correctly found on state habeas review, any alleged deficiency in counsel's advice "was cured when the trial court informed petitioner of the consequences he faced by refusing to cooperate with the Commonwealth's mental health expert."

13

*Muhammad v. Warden*, 646 S.E.2d at 193. This Court finds that the Virginia Supreme Court

reasonably applied the *Strickland* standard, and therefore rejects Muhammad's ineffective

assistance of counsel claims regarding Dr. Cunningham's expert testimony. *See* 28 U.S.C. §

2254(d).

B.      *Claim II: Ineffective Assistance of Counsel for Failure to Object to Self Representation.*

Muhammad contends that his trial counsel also rendered ineffective assistance by failing

to object to his self-representation on the grounds of incompetence. He argues that trial counsel

had information that would have put the trial court on notice of the need for further inquiry into

his competence. Specifically, Muhammad offers: a declaration from Dr. Dorothy Lewis, who

examined him and concluded that he lacked the capacity to represent himself; an MRI of his

brain that he contends demonstrates abnormality in three regions; neuropsychological testing

results of Dr. William Stejskal, which allegedly show severe cognitive impairments; and an IQ

test and expert report allegedly showing that his performance is below "73 percent of other men

his age." Muhammad contends that all of this information – allegedly available to trial counsel

before trial – should have alerted his counsel of his inability to handle his own defense.

Muhammad also argues that the failure of counsel to raise the issue of his competency at trial

severely prejudiced him.[4]

_____

[4] Muhammad cites *Drope v. Missouri*, 420 U.S. 162, 172 (1975) for the test of
competency, which is whether "a criminal defendant 'has sufficient present ability to consult
with his lawyer with a reasonable degree of rational understanding - and whether he has a
rational as well as factual understanding of the proceedings against him.'" But the issue raised in
this petition is whether his counsel was ineffective, not whether Muhammad was incompetent to
stand trial, and *Strickland* provides the appropriate test for Muhammad's ineffective assistance of
counsel claim. In any event, it is likely that the *Drope* test is satisfied by the record here.
Muhammad showed himself able to consult with his lawyers with rational understanding and he

14

On state habeas review, the Virginia Supreme Court applied *Strickland* and dismissed

Muhammad's ineffective counsel claim. It held that Muhammad "failed to demonstrate that

counsel's performance was deficient or that there is a reasonable probability that, but for the

counsel's alleged errors, the result of the proceeding would have been different." *Muhammad v.*

*Kelly*, 646 S.E.2d. at 193. After extensive review of the trial record, this Court agrees that

Muhammad has failed to establish a valid constitutional claim for ineffective assistance of

counsel.[5]

First, Muhammad's ineffective counsel claim fails because he is unable to show the

prejudice required by *Strickland*. 466 U.S. at 694. Muhammad represented himself for two days

during the trial. He argues that his self-representation "mattered in the outcome of the trial"

because during these two days the Commonwealth presented 18 witnesses, including the critical

"sniper expert" Mark Spicer, "without substantial opposition from the defense." But his defense

attorneys served as standby counsel during these two days, during which time they were heavily

involved in the trial and indeed preserved objections to government evidence on Muhammad's

behalf. Significantly, Muhammad has not shown that his self-representation resulted in any

evidence being improperly received and considered by the jury, nor has he directed the Court to a

single piece of prejudicial evidence being admitted during these two days. As such, he cannot

_____

clearly understood the proceedings against him. Both of his defense attorneys found him bright
and articulate, and he persuaded the trial court to allow him to represent himself.

[5] The Warden argues that Muhammad's claim regarding ineffective counsel is
procedurally defaulted. The Court disagrees and finds that the substance of the claim was indeed
adjudicated on the merits in the state court proceedings. Holding that the exhaustion requirement
is satisfied, the Court is free to consider Muhammad's claim and supporting factual materials.
*See Vasquez v. Hillery*, 474 U.S. 254, 257-258 (1986); *see, e.g., Fullwood v. Lee*, 290 F.3d 663,
676 n.4 (4th Cir. 2002).

show a counsel deficiency that "undermine[d] confidence in the outcome" of the trial, and his claim fails for lack of prejudice. *Roane*, 378 F.3d at 405 ("a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"). Without showing that the adverse outcome is directly traceable to an error by counsel, Muhammad cannot prevail under *Strickland*.[6]

Moreover, Muhammad is unable to demonstrate deficiency of counsel under *Strickland*'s first prong, which presumes that counsel were reasonable. 466 U.S. at 687. After careful review of the record and trial transcripts, this Court finds that because Muhammad did not suffer from a mental infirmity rendering him incapable of defending himself, counsel made no error in choosing not to override his request. Muhammad was highly lucid and coherent at trial. The trial court extensively questioned Muhammad concerning his ability to represent himself, and he answered with consistency and clarity. The court specifically inquired into his ability to follow the rules of evidence and to make an opening statement, as well as his background and understanding of the legal system. Muhammad's defense attorneys, Mr. Shapiro and Mr. Greenspun, repeatedly advised Muhammad against representing himself in the months before trial. They further raised their concerns to the court on record when Muhammad moved to represent himself. Nonetheless, when the judge asked the attorneys whether Muhammad could

---

[6] Simply asserting that Muhammad's self-representation "mattered" to the outcome because he did not adequately cross-examine the Commonwealth's witnesses is not enough to show prejudice. Otherwise, nearly every defendant who invoked his constitutional right to represent himself, and then did so poorly, would have a colorable habeas claim for ineffective counsel. This could open the door to defendants gaming the system. Of course, such considerations are not why this Court finds Muhammad's ineffective counsel claim deficient – it fails a straightforward application of the *Strickland* test – but they illustrate why the Supreme Court and the Fourth Circuit have set a high bar for showing ineffective counsel.

adequately represent himself, both expressed the opinion that Muhammad was a "very bright man" and affirmed that he had reviewed all documents and pleadings in the case. It was not unreasonable for the attorneys to give the court their truthful opinion – founded upon months of pretrial interaction with Muhammad – that he was mentally competent and informed about his case. As a further safeguard, the attorneys asked the court to appoint them as standby counsel "to be able to play as full a role as the court will allow," which mitigated any potential harm from Muhammad's self-representation by allowing the defense to preserve objections. Nor does the additional evidence regarding Muhammad's neuropsychological testing, IQ testing, and "abnormal" brain MRIs demonstrate ineffective assistance of counsel. At the outset of trial, Muhammad was articulate enough to convince an experienced trial judge and two experienced defense attorneys that he could represent himself. It would be unreasonable to expect attorneys to override their client's wish to assert his constitutional right by adducing tests and mental evaluations not yet admitted as evidence to make him appear incompetent.

In short, the record and trial transcripts support the conclusion that Muhammad was competent to represent himself.[7] Accordingly, the performance of Muhammad's defense

---

[7] It is clear from the transcript that the trial court fully warned Muhammad of the risks of self-representation, the drawbacks in forgoing experienced legal counsel during a complex trial, and what would be expected of him during trial. The court appropriately instructed him that he had to make objections, abide by the rules of evidence, and not present evidence during opening statements, among other things. Throughout this colloquy, Muhammad's answers and statements were clear and intelligible. Moreover, one need not look further than Muhammad's opening statement during trial to see that he was a man quite lucid, competent, and capable of representing himself. Under *Faretta v. California*, 422 U.S. 806 (1975), which survives the Supreme Court's recent decision in *Indiana v. Edwards*, 128 S. Ct. 2379 (2008), a defendant need not have skills and experience of lawyer to choose self representation, so long as he is made aware of the dangers and makes an informed choice. This standard is easily satisfied by the record here.

attorneys was neither deficient nor prejudicial, and Muhammad's claim regarding ineffective assistance of counsel is dismissed.

C.    *Claim III: The Commonwealth Pursued Inconsistent Theories Against Muhammad and Malvo.*

Muhammad argues that the Commonwealth of Virginia violated his right to due process by taking materially inconsistent positions on whether Muhammad controlled Malvo in the prosecution of each of their cases.[8]  Specifically, Muhammad contends that in his own prosecution in Prince William County, the Commonwealth argued that he directed and controlled Malvo, while in the prosecution of Malvo in Fairfax County, the Commonwealth claimed that Malvo was a "free agent."  The Fourth Circuit has explained that "due process may be violated if 'an inconsistency exist[s] at the core of the prosecutor's cases against the defendants for the same crime,' or where the evidence used at the two trials is 'factually inconsistent and irreconcilable.'" *United States v. Higgs*, 353 F.3d 281, 326 (4th Cir. 2003).  On direct appeal, the Virginia Supreme Court found that the two prosecution theories were consistent and rejected Muhammad's argument. *See Muhammad v. Commonwealth*, 619 S.E.3d at 37-38.  The Court explained that:

> Malvo sought to prove in his case in Fairfax County that he was insane or "brainwashed" by Muhammad.  Evidence was successfully offered to rebut such claims.  In the Fairfax County prosecution, the Commonwealth offered expert testimony that Malvo was "fully cognizant, conscious, deliberate, [and] purposeful."  The Commonwealth argued in Malvo's case that he was a "bright, clever human being" who knew what he was doing

---

[8] Because resolution of this issue requires the Court to apply a constitutional legal standard to the historical record of the Fairfax County and Prince William County trials, the Court agrees with Muhammad that the issue is a mixed question of law and fact evaluated under Section 2254(d). *See Thompson v. Keohane*, 516 U.S. 99, 111-112 (1995).

when he acted in concert with Muhammad. In the Prince William County case against Muhammad, the Commonwealth presented evidence that Muhammad was the "leader" and "teacher" who trained and directed Malvo to perfect his sniper skills. A successful rebuttal of Malvo's affirmative defense of insanity is not inconsistent with a theory of prosecution that includes Muhammad engaged in training and directing Malvo in their sniper team activity.

See *Muhammad v. Commonwealth*, 619 S.E.3d at 38.

Under *Higgs*, there is a potential due process violation only if the prosecution's core theories are "fundamentally inconsistent," or if the evidence used in each case is "factually inconsistent and irreconcilable." 353 F.3d at 326. No such inconsistency exists in this case. *Higgs* instructs that where both prosecutions are based upon the same core facts, there is no due process problem. *Id.* As in *Higgs*, both the Prince William County and Fairfax County prosecutions were based on the same core facts, chiefly that Muhammad trained Malvo as a sharpshooter and that Malvo was not insane, but rather a conscious and deliberate actor who learned to kill under Muhammad's tutelage. Muhammad's argument rests on the flawed premise, supported by neither caselaw nor common sense, that one cannot be a willful actor while being an agent of another. Obviously one need not be "insane" or lack free will to become a trainee; in the words of the Virginia Supreme Court, "[i]t is beyond peradventure that businesses, sports teams, and military operations involve training and direction without insanity of the participants as an issue." *Muhammad v. Commonwealth*, 619 S.E.3d at 38. Muhammad's attempt to manufacture an inconsistency through semantics is unavailing, and the Court must reject this claim on the merits.

D.   *Claim IV: Indictments are Invalid Because They Did Not Allege Aggravating Factors*

Muhammad claims that the Commonwealth's imposition of the death sentence was

19

unconstitutional because his indictment omitted aggravating factors necessary to impose the death sentence. He argues that the United States Constitution requires that the charging document include facts essential to the punishment it seeks to impose, including those necessary to impose the death penalty. *See Ring v. Arizona,* 536 U.S. 584 (2002); *Apprendi v. New Jersey,* 530 U.S. 466 (2000). Muhammad contends that because aggravating factors established his eligibility for the death penalty, it was constitutional error to fail to include and charge the aggravating factors in the capital murder indictment. Virginia law requires that one of two aggravating factors be found by a jury or the court before imposing the death penalty, but does not require that the aggravating factors be set forth in an indictment. *See* VA CODE §19.2-264.2.

The Virginia Supreme Court addressed the merits of this claim on direct appeal, finding that Muhammad had no due process right to have aggravating circumstances recited in the indictments. *See Muhammad v. Commonwealth,* 619 S.E.2d at 38-40. Under the federal habeas statute, relief may only be granted on this claim if the Virginia Supreme Court's ruling was "contrary to, or an unreasonable application of, clearly established federal law." *See* 28 U.S.C. § 2254(d).

This Court finds that the Virginia Supreme Court correctly applied federal law. There is no Supreme Court precedent requiring that aggravating factors be alleged in an indictment. *Ring* and its progeny simply require that such aggravating factors be found by a jury. *See Ring,* 536 U.S. at 589; *see also Powell v. Kelly,* 531 F. Supp. 2d 695, 734 (E.D. Va. 2008) (citing *Blakely v. Washington,* 542 U.S. 296, 301-02 (2004)). Virginia law is in accordance, it requires that when a defendant elects a jury trial, the jury must find one or both of the aggravating factors in order for the death sentence to be imposed. *See* VA CODE §19.2-264.2. That these factors are not set out

in the indictment is of no constitutional moment. Thus, the Virginia Supreme Court correctly

held that "the Virginia statutory scheme does not suffer from the infirmities found in *Apprendi*

and *Ring*." *See Muhammad v. Commonwealth*, 619 S.E.2d at 39. In Muhammad's case,

evidence on the appropriate aggravating factors under Virginia law was submitted to the jury and

found beyond a reasonable doubt before the imposition of the sentence of death. That is all the

Constitution requires. Accordingly, this habeas claim must be dismissed.

E.      *Claim V: The Virginia Terrorism Statutes Are Unconstitutional*

        Following the terrorist attacks of September 11, 2001, the Virginia General Assembly

added three new provisions to the Virginia Code, collectively known as "the terrorism statutes."

*See* VA CODE §§ 18.2-31(13), 18.2-46.4, 18.2-18. The first provision, Virginia Code Section

18.2-31(13), created a capital offense for "willful, deliberate and premeditated killing of any

person by another in the commission or attempted commission of an act of terrorism." The

second provision, Section 18.2-46.4, defined "an act of terrorism" as "an act of violence . . .

committed with intent to (i) intimidate the civilian population at large; or (ii) influence the

conduct or activities of the government of the United States, a state or locality through

intimidation." VA CODE § 18.2-46.4.[9] The third provision, Section 18.2-18, extended the death

penalty to cases where there is "killing pursuant to the direction or order of one who is engaged

in the commission of or attempted commission of an act of terrorism." VA CODE §18.2-18.

Muhammad was convicted of capital murder under Virginia Code § 18.2-31(13) for the willful,

---

[9] Section 19.2-297.1 of the Virginia Code defines "act of violence" as certain aggravated
felonies, including murder, voluntary manslaughter, mob-related felonies, malicious assault or
bodily wounding, robbery, carjacking, sexual assault, and arson.

deliberate, and premeditated killing of Dean Meyers in the commission of an act of terrorism.

Muhammad argues that the terrorism statutes are unconstitutionally vague and overbroad, because they "do not define what constitutes 'terrorism' with sufficient particularity to provide notice and to prevent arbitrary and discriminatory enforcement," and do not "establish minimal guidelines to govern law enforcement." *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citations omitted). Specifically, Muhammad contends that three phrases within the definition of terrorism in Section 18.2-46.4 are impermissibly vague: "intimidate," "civilian population at large," and "influence the conduct or activities of the government."

The U.S. Supreme Court has explained that "[v]agueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Chicago v. Morales*, 527 U.S. 41, 56 (1999).[10] On direct appeal, the Virginia Supreme Court rejected Muhammad's arguments on the merits after a thorough discussion of federal precedent. *See Muhammad v. Commonwealth*, 619 S.E.2d at 42. This Court may not disturb this decision unless it is an unreasonable application of

---

[10] In the speech context, the U.S. Supreme Court has framed the inquiry for vagueness and overbreadth as follows:

> "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495 (1982).

the *Morales* standard.  *See* 28 U.S.C. § 2254(d).

The Court finds that the word "intimidate" can be readily understood by ordinary people. *See Muhammad v. Commonwealth*, 619 S.E.2d at 42; *Morales*, 527 U.S. at 56.  "Intimidate" is a commonly-used term in English conversation, usually meaning "to make timid or fearful."  *See, e.g.*, Webster's New Collegiate Dictionary, at 634 (9th Ed. 1991).  Moreover, "intimidate" has a well-established meaning in Virginia common law.  *See Sutton v. Commonwealth*, 324 S.E.2d 665, 669 (1985) (defining intimidation as unlawful coercion; extortion; duress; putting in fear) (citing Black's Law Dictionary, at 737 (5th ed. 1979)).  Although Muhammad correctly notes that the Virginia General Assembly did not define "intimidate" in the terrorism statutes, the legislature is presumed to have legislated with the common law meaning in mind.  *See Gilbert v. U.S.*, 370 U.S. 650, 655 (1962) ("in the absence of anything to the contrary it is fair to assume that Congress used that word in the statute in its common-law sense"); 2B Sutherland Statutory Construction § 50:3 (7th ed. 2008) ("The interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter.").

Likewise, this Court does not find the phrase "civilian population at large" impermissibly vague.  As the Virginia Supreme Court noted on direct appeal, the phrase "population at large" is used in law to describe an entire group of persons, as opposed to a narrow subset of that group. *See Muhammad v. Commonwealth*, 619 S.E.2d at 43; *see also Lewis v. Casey*, 518 U.S. 343, 358 (1996) (a prison "population at large" consists of everyone in the prison); *Lockhart v. McCree*, 476 U.S. 162, 179 (1986) (in case involving exclusion of jurors from capital juries, "population at large" meant the community from which the jury pool could be chosen).  Thus, by specifying that terrorist acts must intimidate the "population at large," the General Assembly was

circumscribing violence intended to induce fear in the whole community.[11] Obviously, not all violent acts will meet this definition, otherwise the additional intent element would be surplusage. But violence committed with the goal of making the entire community fearful is "an act of terrorism" under this statute.

As to the second intent prong, the Virginia Supreme Court explained that "we do not believe that a person of ordinary intelligence needs further definition of the phrase 'influence the conduct or activities of the government[.]'" *Muhammad v. Commonwealth*, 619 S.E. 2d at 43. This Court agrees. The plain meaning of this language encompasses violence motivated by a political purpose, as well as violence intended to disrupt the functioning of government. The phrase is clear enough to put ordinary people on notice of what conduct is prohibited. *Morales*, 527 U.S. at 56.[12]

Additionally, the Virginia statute defines "act of terrorism" using nearly identical language as used in federal definitions of terrorism. *Compare* VA CODE § 18.2-46.4 (enacted 2002), *with* 18 U.S.C. § 2331(5)(B)(i)-(ii) (defining "domestic terrorism") (enacted 1992).[13] Both the Virginia statute and the federal terrorism statutes essentially prohibit violent acts

---

[11] The modifier "civilian" exempts the military from this population, presumably to exempt violence committed during armed conflict in a recognized war.

[12] The statute uses the disjunctive "or" and then enumerates two separate types of intent that can qualify an act of violence as terrorism. *See* Section 18.2-46.4 (defining "act of terrorism" as "an act of violence . . . committed with the intent to (i) intimidate the civilian population at large; *or* (ii) influence the conduct or activities of the government . . .") (emphasis added). Thus, the statute does not require an intent *both* to intimidate the civilian population *and* an intent to influence government through intimidation – either intent should suffice.

[13] Section 2331 was enacted in 1992 and contained this definition of domestic terrorism. *See* Pub. L. No. 102-572, 106 Stat. 4506 (1992).

committed with the intent to intimidate a civilian population or to influence a government. No

court has found the federal definition in Section 2331 unconstitutionally vague, and this Court

declines to interpret the Virginia Code in a manner that would, by implication, cast doubt upon

the constitutionality of nearly all federal antiterrorism law.[14]

Muhammad next argues that Section 18.2-18 is unconstitutionally vague because it does

not define "direction" or "order" as used in the terrorism context. *See* VA CODE § 18.2-18.

Section 18.2-18 provides, in pertinent part:

> In the case of . . . a killing pursuant to the direction or order of one who is engaged in the
>
> commission of or attempted commission of an act of terrorism . . . an accessory before the
>
> fact or principal in the second degree to a capital murder shall be indicted, tried,
>
> convicted and punished as though the offense were murder in the first degree.

The Court finds the phrase "killing pursuant to the direction or order of" to be sufficiently clear

to put ordinary people on notice of the prohibited conduct. The phrase plainly means killing at

the behest of another. Thus, the statute provides that where multiple individuals act in concert to

perform a terrorist killing, each actor is punishable for first-degree murder. Since 1997, the

statute has contained the exact phrase "killing pursuant to the direction or order of," in reference

---

[14] Other federal statutes use a definition of terrorism that is substantially the same as that in Section 2331, and the constitutionality of these definitions does not appear to be in question. The definition in Section 2331(5) almost mirrors the definition of "international terrorism" contained in the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801(c), as well as numerous other federal statutes. *See* Nicholas J. Perry, *The Numerous Federal Legal Definitions of Terrorism: The Problem of Too Many Grails*, 30 J. Legis. 249, 255-261 (2004). The FISA definition has been in effect since the statute's enactment in 1978, *see* Pub. L. No. 95-511, 92 Stat. 1783 (1978). This Court was unable to find a single case successfully attacking any of these statutory definitions on vagueness grounds.

to killing in furtherance of a continuing criminal enterprise, and no defendant has successfully

challenged it on vagueness grounds. *See* VA LEGIS 313 (1997). This speaks strongly as to its

constitutional validity.

Muhammad also argues that Virginia Code Section 18.2-31(13) is unconstitutional

because it allegedly provides for the death penalty without proof of intent to kill. Muhammad

cites *Enmunds v. Florida*, 458 U.S. 782 (1982), for the proposition that a person may not be

convicted of the death penalty without specific intent to kill.[15] Simply put, his argument rests on

a misapprehension of the statutes. Section 18.2-31(13) does not in any way reduce the level of

intent required for first-degree murder; rather, it provides that "[t]he *willful, deliberate, and*

*premeditated* killing of any person by another in the commission of or attempted commission of

an act of terrorism" is a capital offense. VA CODE § 18.2-31(13) (emphasis added). Section

18.2-18, in turn, provides that a "principal in the second degree" to a terrorist killing shall be

punished for first degree murder. *See Fleming v. Commonwealth*, 412 S.E.2d 180, 182 (Va. App.

1991) ("a principal in the second degree is one who is present, actually or constructively,

assisting the perpetrator in the commission of the crime"). In no way does this statutory scheme

lower the intent requirement for capital murder. As the Virginia Supreme Court stated, "the

criminal actor who 'directs' or 'orders' the killing shares the intent to kill with the one who

---

[15] Muhammad is incorrect that Supreme Court precedent categorically prohibits the death penalty without proof of specific intent to kill. According to *Tison v. Arizona*, 481 U.S. 137 (1987), the Eighth Amendment does not prohibit the death penalty where a defendant participates with reckless indifference in a felony that results in murder. "We will not attempt to precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty here. Rather, we simply hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmunds* culpability requirement." *Id.* at 158.

carries out the murder." *Muhammad v. Commonwealth*, 619 S.E.2d at 44.

Moreover, Muhammad does not argue that he personally lacked the specific intent to kill, but rather that "[t]he statutes expand the application of the death penalty to persons that may be involved in a terrorist scheme or plot but are unaware that the act will result in the loss of life." As such, his challenge is based exclusively on the hypothetical conduct of others. Such challenges are invalid. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495 (1982) ("One who engages in conduct that is clearly proscribed and not constitutionally protected may not successfully attack a statute as void for vagueness based upon the hypothetical conduct of others.").

Muhammad argues that the terrorism statutes are unconstitutional because they make it impossible to empanel an impartial jury. He reasons that because victims of a crime cannot be jurors in a case involving that crime, and all members of the "civilian population at large" are "victims" of terrorism, nobody from the civilian population is qualified to serve on his jury. The Virginia Supreme Court squarely rejected this argument on the merits, holding that members of the jury were not the victims contemplated by the terrorism statutes. *See Muhammad v. Commonwealth*, 619 S.E.2d at 51. This Court agrees. The victims of a terrorism offense are the individuals harmed by the "act of violence," which must be done with the "intent to . . . intimidate the civilian population at large" to be an act of terrorism. VA CODE § 18-46.4. Thus, intimidation of the civilian population is a motive element that qualifies an act of violence as terrorism under the statute. Muhammad's tautology therefore does not survive a plain reading of the statute, and the Court joins the Virginia Supreme Court in rejecting this argument.

Finally, Muhammad cannot prevail on a vagueness challenge because his acts clearly

violated the terrorism statutes.  *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ( "One to whose

conduct a statute clearly applies may not successfully challenge it for vagueness"); *see also*

*Commonwealth v. Hicks*, 596 S.E.2d 74, 78 (Va. 2004).[16]  Muhammad's murderous, forty-seven

day rampage in the fall of 2002 could not more squarely fit the conduct proscribed by the

Virginia terrorism statutes.  He murdered Dean Meyers during a horrific killing spree in which he

targeted civilian victims at random and paralyzed the Washington, D.C. metro region with fear.

The shootings were viciously calibrated to induce maximum terror in the community by using

sniper methods, selecting victims at random, and altering times and locations of the attacks.  If

"intimidate . . . the civilian population at large" means anything at all, it must include

Muhammad's gruesome acts from September 5 to October 22, 2002.  Because the terrorism

statute clearly applies to his conduct, his vagueness challenge fails.  *Parker*, 417 U.S. at 756.[17]

    In summary, the Virginia terrorism statutes are sufficiently clear to put ordinary people on

notice of what conduct is prohibited, and the statutes do not encourage arbitrary or discriminatory

---

[16] *See also Gibson v. Mayor of Wilmington*, 355 F.3d 215, 225 (3d Cir. 2004); *Fuller v. Decatur Public School Board of Education School District 61*, 251 F.3d 662, 667 (7th Cir. 2001); *Joel v. City of Orlando*, 232 F.3d 1353, 1359-60 (11th Cir. 2000); *United States v. Tidwell*, 191 F.3d 976, 979 (9th Cir. 1999); *United States v. Hill*, 167 F.3d 1055, 1063-64 (6th Cir.), *cert. denied*, 528 U.S. 872 (1999); *Woodis v. Westark Community College*, 160 F.3d 435, 438-39 (8th Cir. 1998); *United States v. Corrow*, 119 F.3d 796, 803 (10th Cir. 1997), *cert. denied*, 522 U.S. 1133 (1998); *Love v. Butler*, 952 F.2d 10, 14 (1st Cir. 1991); *Hastings v. Judicial Conference of the United States*, 829 F.2d 91, 107 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 1014 (1988); *Hill v. City of Houston*, 789 F.2d 1103, 1127 (5th Cir. 1986), *aff'd*, 482 U.S. 451 (1987); *Gallaher v. City of Huntington*, 759 F.2d 1155, 1160 (4th Cir. 1985).

[17] Again, Muhammad cannot raise a successful constitutional challenge based upon the statute's application to the hypothetical conduct of others.  "One who engages in conduct that is clearly proscribed and not constitutionally protected may not successfully attack a statute as void for vagueness based upon the hypothetical conduct of others."  *Muhammad v. Commonwealth*, 619 S.E.2d at 44 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495 (1982)).

enforcement. *Morales*, 527 U.S. at 56. The Court therefore finds the Virginia Supreme Court's application of federal law reasonable and correct, and dismisses each of Muhammad's constitutional challenges. 28 U.S.C. § 2254(d).

F.    *Claim VI: The Brady Claims - Commonwealth Withheld Exculpatory Evidence*

Muhammad alleges that the Commonwealth violated his rights under *Brady v. Maryland*, 373 U.S. 81 (1963), by withholding exculpatory information that constituted material evidence. Specifically, Muhammad claims that the Commonwealth withheld approximately 30,000 pages of documents originally in the possession of the multi-jurisdiction joint investigation, which were turned over to him by Maryland prosecutors shortly before the filing of his state habeas petition. Muhammad asserts that these alleged *Brady* violations contributed to his guilt and death verdict and violated his Eighth Amendment right to be free from cruel and unusual punishment.

In his federal habeas petition, Muhammad argues that the Commonwealth failed to provide six categories of exculpatory evidence: (1) the so-called "sniper team" evidence, contents of an FBI Criminal Investigative Analysis which he contends would have undermined the Commonwealth's theory that two people are necessary for sniper shooting;[18] (2) statements contrary to eyewitness accounts in regard to the Claudine Parker murder in Montgomery, Alabama;[19] (3) statements contrary to the eyewitness accounts of the Charlot murder in

_____

[18] Specifically, Muhammad contends that the Commonwealth suppressed an FBI Criminal Investigative Analysis that would have rebutted the testimony of the Commonwealth's witness Mark Spicer regarding the sniper team theory.

[19] Muhammad contends that the Commonwealth suppressed key facts regarding the Parker murder, including the statements of two witnesses, Clyde Wilson and Cecil Milstead, who told police that the shots were coming from in front of the ABC store where Malvo was standing.

Washington, D.C.;[20] (4) evidence that eyewitness Ingrid Shaw identified the wrong make and

model of the getaway car after the Ballenger murder in Louisiana; (5) evidence that ballistics is

not an exact science; (6) the so-called "Pac-Man" letters, *i.e.*, letters written by Malvo in jail to

another inmate, which allegedly tend to demonstrate that Malvo was in control of his life,

actions, and thoughts. In sum, Muhammad contends that all of the withheld evidence is material

because there is a reasonable probability it would have had an effect on the verdicts regarding

both his guilt and his punishment. *See Banks v. Dretke*, 540 U.S. 668, 701 (2004); *Kyles v.*

*Whitley*, 514 U.S. 419, 437 (1995). By combination of both direct review and state habeas

review, the Virginia Supreme Court dispensed with all of Muhammad's claims regarding *Brady*

material. *See Muhammad v. Commonwealth*, 619 S.E.2d at 49-50; *see also Muhammad v.*

*Warden*, 646 S.E.2d at 186-191.

Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to

an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The

purpose of the *Brady* rule "is not to displace the adversary system as the primary means by which

truth is uncovered, but to ensure that miscarriage of justice does not occur." *United States v.*

*Bagley*, 473 U.S. 667, 675 (1985). To violate *Brady*, the withheld evidence must be material, in

other words, it must be evidence that "might have affected the outcome of the trial." *United*

*States v. Agurs*, 427 U.S. 97, 104 (1976). It is settled practice that the prosecutor makes

---

[20] He argues that the Commonwealth suppressed the fact that the only witness who positively identified Muhammad's car, Gail Howard, had stated at a previous time that she could not identify the car. Further, he puts forth that the Commonwealth failed to disclose numerous discrepancies in various eyewitness accounts of the Charlot murder.

decisions regarding which material evidence is exculpatory, *Pennsylvania v. Ritchie*, 480 U.S.

39, 59 (1987), and the prosecutor is required to produce only evidence that would deprive the

defendant of a fair trial if suppressed. *Bagley*, 473 U.S. at 675.  "[U]nless the omission deprived

the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set

aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional

duty to disclose." *Agurs*, 427 U.S. at 108.  Accordingly, "the omission must be evaluated in the

context of the entire record.  If there is no reasonable doubt about guilt whether or not the

additional evidence is considered, there is no justification for a new trial." *Id.* at 112-113.  As the

Virginia Supreme Court explained, "we do not reach the issue of materiality unless we first

determine that the evidence is favorable to the accused, because it is exculpatory or because it

may be used for impeachment." *Muhammad v. Warden*, 646 S.E.2d. at 191 (citing *Workman v.*

*Commonwealth*, 636 S.E.2d. 368, 375 (Va. 2006)).

Upon review, the Court finds no error in any of the Virginia Supreme Court's holdings on

state habeas review.  First, as to the "sniper team evidence," this Court agrees that the FBI

Criminal Investigative Analysis was not favorable to the petitioner.  The paragraph from the FBI

analysis upon which Muhammad relies reads as follows:

> There is likely only one offender.  Sniper type attacks are generally a solitary type
>
> of murder.  It would be extremely unusual for there to be multiple offenders
>
> involved in this series of attacks.  If there is a second offender, he is not likely to
>
> be an equal partner in these crimes, and would be subservient to the primary
>
> offender.

Taken as a whole, this paragraph "supports the evidence admitted at trial and the

31

Commonwealth's theory of the case. Therefore, the portion of the statement taken in context, is not exculpatory." *See Muhammad v. Warden*, 646 S.E.2d at 187.

Second, with regard to Muhammad's habeas claims regarding the Parker murder, the Court finds that the Virginia Supreme Court reasonably applied federal law in determining that no *Brady* violations occurred. *See Muhammad v. Warden*, 646 S.E.2d at 189-190. Furthermore, did not raise the suppression of Cecil Milstead's statement on state habeas appeal, and this Court is precluded from further review of this claim on the merits. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996); 28 U.S.C. § 2254(e)(2).

Third, the Court agrees with the Virginia Supreme Court's determination that the withheld evidence regarding the Charlot murder in Washington, D.C. was neither favorable to Muhammad nor exculpatory. The Commonwealth did not "suppress" Gail Howard's statement on CNN, a national news network. Statements broadcast on national news are not *Brady* material in the first place, as they are public knowledge and readily available to the defense. *See Muhammad v. Warden*, 646 S.E.2d at 190. As to Muhammad's assertion that seven witnesses "provided a description to officers within hours of the shooting [that] tended to show that a handgun was used to kill Charlot at close range," the Court finds that the testimony of these witnesses would not have been exculpatory. All seven witnesses told police that they heard one or two shots, most saw at least one car speeding away, and their reports were consistent with the testimony of the two trial witnesses. Moreover, the evidence at trial clearly proved that Charlot was killed by a bullet fired from Muhammad's Bushmaster rifle, thus negating Muhammad's argument that the witness reports were material and would have changed the outcome at trial. *Id.* at 190-191; *Agurs*, 427 U.S. at 104.

32

Fourth, Muhammad contends that the Commonwealth improperly failed to disclose a police interview report that contained an account of interviews with Ingrid Shaw, a witness to the Hong Im Ballenger murder in Baton Rouge. According to this report, during her initial interviews Ms. Shaw stated that a blue Oldsmobile Cutlass with a Louisiana license plate picked up a young man fleeing the shooting scene with a purse and a gun. Also according to the report, Ms. Shaw was shown three separate police lineups, each containing a different suspect and none containing Malvo or Muhammad, and she did not identify anyone in these lineups as the fleeing suspect. At trial, Ms. Shaw positively identified pictures of Muhammad's blue Chevy Caprice as the car she saw picking up the fleeing suspect, and positively identified a picture of Malvo as that fleeing suspect.

The Court finds that the police report could have been used as a prior inconsistent statement to impeach Ms. Shaw's trial identification of Muhammad's blue Caprice as the getaway car. *See Giglio v. United States*, 405 U.S. 150 (1972); *Bagley*, 473 U.S. at 675. As to materiality, however, the Court finds no constitutional error. *Agurs*, 427 U.S. at 112-113. The outcome of Muhammad's trial in Virginia did not depend upon his culpability for the Ballenger murder in Louisiana. He was tried and convicted on multiple capital counts based upon the murder of Dean Meyers in Prince William County, and the Ballenger murder was only one of several predicate killings qualifying Muhammad for capital murder under Virginia Code § 18.2-31(8). In other words, even without the Ballenger murder, Muhammad still would have qualified for the death penalty under Section 18.2-31(8) based upon his other killings. Moreover, the forensic evidence adduced at trial proved that Muhammad's Bushmaster rifle fired the bullet that killed Ms. Ballenger. If Muhammad had used the Baton Rouge police report to impeach Ms.

33

Shaw, the jury would have learned that although she got the color of the getaway car correct, she did not get the make and model of the car correct. But this would not have changed the outcome of the trial in light of her positive identification of Malvo as the fleeing suspect and the powerful forensic evidence linking Muhammad to the Ballenger murder. *Agurs*, 427 U.S. at 104; *Bagley*, 473 U.S. at 675.

Fifth, Muhammad concedes that he did not present to the Virginia Supreme Court his claim concerning the withheld information on the supposed unreliability of the science of ballistics. Accordingly, the Court is foreclosed from reviewing the merits of his claim. *Gray*, 518 U.S. at 162; 28 U.S.C. § 2254(e)(2).

Finally, Muhammad claims that his due process rights were violated by the Commonwealth's failure to disclose information that tended to show that he did not direct or control Malvo. In this claim, Muhammad refers to the infamous "Pac-Man" letters which were written by Malvo to another inmate, nicknamed "Pac-Man." Muhammad alleges that these letters contradicted the Commonwealth's theory that he directed and controlled Malvo, and thus are relevant to whether his conduct qualifies under the definition of terrorism contained in Virginia Code Section 18.2-18. The Virginia Supreme Court addressed this claim on direct appeal and dismissed it entirely, finding that the letters were not exculpatory in nature and not likely to be admissible. *See Muhammad v. Commonwealth*, 619 S.E.2d. at 50.

Upon examination, the Court finds that the Virginia Supreme Court reasonably applied clearly established Supreme Court precedent and made a reasonable determination based on the facts in the case. Muhammad fails to provide clear and convincing evidence to rebut the Virginia Supreme Court's findings. The Court agrees that the letters do not significantly address the

34

relationship between Malvo and Muhammad.  The ability of Malvo to think and act independently was amply revealed in other discovery that was provided for Muhammad.  In all, the Court agrees that "the letters were not exculpatory in nature, were not likely to be admissible in Muhammad's case, were cumulative of other testimony, and the admission of such letters would not result in a 'reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.'"  *Id.*

In totality, the Court agrees with the Virginia Supreme Court that all of the suppressed evidence upon which the petitioner relies was either unfavorable or immaterial, as it failed to undermine the considerable evidence admitted at trial that proved Muhammad's guilt beyond a reasonable doubt.  As such, Muhammad has not established that "there is a reasonable probability that his knowledge or use of the alleged exculpatory evidence would have undermined the confidence in the outcome of the trial." *See Muhammad v. Warden*, 646 S.E.2d. at 191.  His claims with regard to *Brady* material are hereby dismissed in their entirety.

35

## V.    Conclusion

For the reasons stated above, Respondent's Motion to Dismiss must be granted and the Petitioner's Petition for Writ of Habeas Corpus Ad Prosequendum *First Amended* must be dismissed in full.  Accordingly, the stay of execution entered by Order of the Court dated October 26, 2007, is hereby lifted.  An appropriate order shall enter.

ENTERED this 24th day of September, 2008.


_____/s/_____
Liam O'Grady
United States District Judge


Alexandria, Virginia

36